## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WISCONSIN

| | | |
|---|---|---|
| RIVER HILLS COMMUNITY CHURCH OF SAUK PRAIRIE, INC., a Wisconsin church individually and in its capacity as representative of certain individual members, | ) ) ) ) ) ) | |
| Plaintiffs, | ) | CASE NO. 14-cv-48 |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| VILLAGE OF SAUK CITY, WISCONSIN, | ) ) | |
| | ) | |
| Sauk City. | ) | |

## COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT AND DAMAGES

Plaintiffs RIVER HILLS COMMUNITY CHURCH OF SAUK PRARIE, INC. ("**River Hills**" or "**the Church**"), individually and in its capacity as representative of certain individual members, complains against the Sauk City VILLAGE OF SAUK CITY ("**Sauk City**") as follows:

### INTRODUCTION/EXECUTIVE SUMMARY

1.    When government forbids where people may worship it must have a strong and overriding reason for doing so. *See Church of Lukumi Babalu Aye v. City of Hialeah*, 508 U.S. 520, 531-532 (1993); *see Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 2012 U.S. LEXIS 578, *31 (Decided Jan. 11, 2012); *see also* Religious Land Use and Institutionalized Persons Act, 42 USC §2000cc, et seq. ("RLUIPA").

2.     And "when a zoning law infringes upon a protected liberty, it must be narrowly drawn and must further a sufficiently substantial government interest." *Schad v. Borough of Mount Ephraim*, 452 U.S. 61, 68 (1981).

3.     Here, the zoning laws and actions of Sauk City are infringing upon the protected liberties of the members of River Hills Community Church to worship at 1111 Sycamore Street in *inter alia* the following, unlawful ways:

> a.  Sauk City does not permit churches or religious assemblies as of right in *any* zoning district in violation of 42 USC §2000cc,
>
> b.  Sauk City singles out churches and religious assemblies for unequal treatment compared to a large number of non-religious assembly uses.
>
> c.  Sauk City is infringing upon the Church's freedom to assemble for worship in a way that is not narrowly drawn to further any sufficiently substantial government interest.

4.     Because the Village of Sauk City's unlawful zoning laws and actions are infringing upon the Church's exercise of *First Amendment* freedoms, the Church is entitled to immediate injunctive and declaratory relief from the same. *Elrod v. Burns,* 427 U.S. 347, 373 (1976); *Murphy v. Zoning Comm'n of the Town of New Milford*, 148 F.Supp.2d 173, 180-81 (D.Conn. 2001) ("Since [RLUIPA] was enacted for the express purpose of protecting First Amendment rights of individuals, the allegation that [the Town] has violated this statute also triggers the same concerns that led the court to hold that these violations result in a presumption of irreparable harm") (citations omitted).

## IDENTIFICATION OF THE PARTIES

5.     Plaintiff River Hills Community Church of Sauk Prairie, Inc., is a Wisconsin church with a congregation of about 100 people and is a nonprofit organization under the laws of Wisconsin. (Declaration of Pastor Dennis Virta supporting facts herein is attached as Exhibit A).

6.     Pastor Dennis Virta is the founder and senior pastor of River Hills Community Church of Sauk Prairie, Inc. ("River Hills") and has the authority to speak and act on behalf of River Hills and its members. His declaration is attached hereto as Exhibit A and supports the facts alleged herein.

7.     Sauk City Village of Sauk City is a municipal corporation organized and existing under the statues and constitution of the State of Wisconsin.

8.     Sauk City, through its President and Trustees, is responsible for the enactment and enforcement of the ordinance challenged herein.

## SAUK CITY'S ZONING CODE

9.     Chapter 365 of Sauk City's Municipal Code governs zoning within Sauk City's jurisdiction. Relevant portions are attached as Group Exhibit C.

10.     According to § 365-10, Sauk City is divided into the following, fourteen zoning districts:  Single-Family Residential District (R-1-A and R-1-B), Two-family Residential District (R-2), Multifamily Residential District (R-M), Highway Business District (B-H), Central Business District (B-C), Neighborhood Business District (B-N), Limited Industrial District (M-L), General Industrial District (M-G), Agricultural District (A-G), Agricultural Preservation District (A-P), Agricultural

3

Holding District (A-H), Agricultural Transition District (A-T), and Agricultural-Related Manufacturing and Commercial District (A-R).

11.     Churches are not zoned as permitted or approved uses in any of the fourteen zoning districts.

12.     According to § 365-94(E), Churches are only classified as a "conditional use" in residential districts "provided that the lot area is not less than two acres and all principal structures and uses are not less than 50 feet from any residential district boundary line.

13.     § 365-9 defines "USE, CONDITIONAL" as:

A use, either public or private, which because of its unique characteristics cannot be properly classified as an approved use in any particular district or districts. In each case, after due consideration by the Plan Commission of the impact of such use upon neighboring land and of the public need for the particular use at the particular location, such conditional use may or may not be granted.

14.     The Seventh Circuit has held this differential treatment to be impermissible.  In *River of Life,* the court said the following: "But should a municipality create what purports to be a pure commercial district and then allow other uses, a church would have an **easy** victory if the municipality kept it out." 611 F.3d 367 at 374 (emphasis added).

**BACKGROUND OF THE CHURCH & THE PROPERTY AT ISSUE**

15.     The Church was formed in 2005 and initially met in small group gatherings at it lacked a permanent, indoor meeting place of its own; rather the Church met at locations such as Devil's Lake State Park, a families' walk-out basement, a back yard, or in a large lawn under an oak canopy in the summer.

4

16.    On or about October 3, 2013, the Church entered into a real estate purchase contract to buy the vacant building and property at 1111 Sycamore Street, Sauk City, ("Property")which is pictured below in Google® Images from last fall:



17.     The Village of Sauk City's Zoning Code discriminates against religious assemblies by prohibiting churches where other non-religious assemblies are allowed as a matter of right and or as conditional uses.

18.     Such differential treatment of similarly situated non-religious comparators is impermissible. See *Chabad of Nova v. City of Cooper City*, 533 F.Supp.2d 1220 (S.D.Fla. 2008), which held that a city's ordinance violated RLUIPA's equal terms provision by prohibiting religious assemblies in business districts while permitting nonreligious assemblies such as "day care centers," "indoor recreational facilities" and "theaters" within the same districts. 533 F.Supp.2d at 1222-23 (citation omitted).

19.     Sauk City's actions and Zoning Code violate Plaintiffs' rights under the United States Constitution; the Religious Land Use and Institutionalized Person's Act (RLUIPA), 42 U.S.C. § 2000cc-1, *et seq*.; Wisconsin land use law and Article 1 Section 18 of the Wisconsin Constitution.

20.     Through its zoning restrictions, Sauk City expressly discriminates against churches generally and specifically discriminated against the Church in a way that has caused and threatens further irreparable harm to their constitutional and statutory rights.

21.     To vindicate the Church's rights, compensate for the damage that has been done, and avoid further irreparable harm, the Church seeks declaratory and injunctive relief for violation of their constitutional and statutory rights, as well as compensatory damages.

22.     Sauk City's Zoning Code threatens the continued existence of the Church, interferes with the Church's religious mission and growth and continues to put a major financial strain on the Church.  Sauk City has closed the doors to the Church.

23.     River Hills accordingly challenges, both facially and as-applied to its religious speech and activities, Sauk City's zoning provisions.

## DESCRIPTION OF THE LOCATION

24.     The property located at 1111 Sycamore Street in Sauk City was used for over twenty years as a bank/office building and sits on two acres of land located in the Village's General Industrial zoning district (M-G).

25.     The building occupies 5,500 square feet and currently houses eight offices, two conference rooms with plenty of extra space for a congregation of River Hills' size.

26.     The building is nearly adjacent to the Church's prior meeting place (where the Church met without issue from the Village for three years) at 855 Community Drive as shown in the photograph below (with the Sycamore Street property in the upper-right-hand corner and the Community Drive property in the lower-left-hand corner) on the next page:



27.     The Church started as a lunch gathering on the shores of Devils Lake in Devils Lake State Park and then transitioned to meeting in the backyards during the initial summer and autumn and then into the Sauk Prairie Community Center in Sauk City.

28.     The Church rented office space from Esther Blackmon at 707 Water Street, Sauk City.

29.     The Church grew quickly and needed additional office and ministry spaces and ended up renting a larger suite.

30.     Scheduling conflicts caused the Church numerous problems at the Community Center, which came to the attention of a group of doctors, Primary Property LLC, (Dr. Tim Barthelow, managing partner), who had a vacant 20,000-square-foot office building at 855 Community Drive, Sauk City, within the Sauk City Business Park, which they made available for it in return for maintenance and payment of utilities.

31.     In entering into the agreement with Primary Partners, the Church stated its goal to either a) purchase the building for use as a ministry center; or b) via high traffic community involvement in the building, to help expose the building to a potential lessee who would pay market price.

32.     Three years later the Church then moved to the River Arts Center, adjacent to the Sauk Prairie High School at 9th and Oak Streets in Prairie du Sac, WI, the municipality adjoining Sauk City, where it has been renting for Sunday services ever since.

33.     The Church needed office space so it also rented space in the Prairie du Sac Industrial Park.  When the Church applied for a CUP to run a youth center and ministry center in the back warehouse, the Prairie du Sac Village Board denied citing potential traffic hazards for children walking to and from the center where there are no sidewalks. Local police officers told the Church that they would support any future effort to locate in the villages as they appreciated what we were doing for youth (see below).

34.     Since ministry was no longer possible at the Prairie du Sac location, Esther Blackmon made space available to the Church back at the 707 Water Street, Sauk City; thus, the Church was using the 707 Water Street location for offices and an activity center, and the River Arts Center (RAC) for Sunday services.

35.     Children's programming suffers greatly in the RAC environment.

36.     Church attendance went from 40+ children at 855 Community Drive down to 4-10 children after it moved to the rented space in the RAC.

37.     River Hills has provided the following services to its community during the past eight years, but because of its current rental situation and zoning at its activity center, it cannot offer all of these services at the current time as it would if it had its own building:

    a.      Weekend services reaching out to those in the greater Sauk and Madison communities who have been alienated by traditional Christian religious approaches.  Church byline:  when you've given up on religion, but not on God, there's River Hills.

    b.      Child Character Development programming offered during (a) above for children kindergarten through fifth grade called KidStuff teaching a different character trait each month (e.g., responsibility -- "doing what needs to be done even when you don't feel like doing it.")

    c.      The Loft and Backstage – safe, "hang-out" environments for middle and senior high youth, particularly those that have been marginalized by society or local community providing mentoring and character/spiritual

10

development, video gaming, pool, ping pong, cafe.  etc. ; attracted up to 70 kids each week.

     d.     Young Mom's – a peer support and mentoring program for new moms and activities/care for their children.

     e.     Community Meals – a shared outreach with Concordia Methodist Church of Prairie du Sac to the lonely and homeless in the community.

     f.     Financial Peace University – a community service and outreach wherein we teach individuals and couples how to get out of debt and invest in their future.  One farm-hand couple approached the Church recently to share they had shed $47,000 of consumer debt with the Church's help.

     g.     CARS – a ministry providing affordable car care to those who could not otherwise afford it.  Licensed mechanics offer car repairs for the price of parts, and/or totally free repairs to those who cannot afford parts.  When the mechanics cannot perform the work, the Church partners with local garages to arrange guaranteed payment plans for the individual.

     h.     Military Outreach USA – reaching out to combat and non-combat veterans, providing safe, empathetic environments for those suffering trauma and moral injury.

     i.     Stephen Ministries – training people in empathic and listening skills to provide weekly on-going support to those in the community who have suffered loss.

        j.       Ski-the-Lake – providing fun on the lake to families and children who might not otherwise to be able to enjoy water sports. They meet every Sunday throughout the summer. Family Day brings in 70-100 participants.

        k.      The Church has a very talented pool of musicians it shares out with other organizations in need of free music and they recently played for the Honor Flight fund raiser in Sauk Prairie.

        l.       Numerous other in-house groups ministering primarily to the needs who call River Hills "home" – (c) through (k) are essentially the Church's attempts to serve known needs in the community.

38.     River Hills has always operated solely through the donations of those it serves with no outside funding or grant source.

39.     When the Church learned that it would no longer be able to meet at 855 Community Drive, it consulted church operations consultant, Jim Griffith out of Colorado, who said the Church needed to find a permanent place as soon as possible because everyone viewed the Church's presence in the Sauk City Business Park as a permanent location, whether the Church owned it or not and that moving to an obviously temporary location was a dangerous step backwards.

40.     The Church has been at that location five years now, surviving but not thriving as it did previously.

41.     Knowing the Church needed a permanent location, Church leadership has been searching and negotiating for a permanent location for six years.

42.     When it considered the historic Riverview Ball Room in the business district in Sauk City, Village Administrator Vicki Breunig and Trustee Richard Marks both showed enthusiasm when Pastor Virta took them on a "vision-walk" through the building, never saying that a church would not be possible in the business district.

43.     Plunkett Raysich Architects of Milwaukee worked with the Church to determine that use of the Riverview Ballroom was impracticable as costs would exceed two million dollars, $1.1 million just to get an occupancy permit.

44.     The Church has looked at every existing, available, possibly suitable, building in Sauk City and Prairie du Sac: a former library, warehouses, office buildings, but nothing has worked.

45.     Finally, the Church's bank built a new building, leaving vacant the building immediately in front of the Church's former successful location in the Sauk City Business/Industrial Park.

46.     The bank's president approached Pastor Virta about the property several times, as did members of both the community and the church.

47.     After visioning the building and site with the Church's architect, getting affirmation from the Director of the Chamber of Commerce and a nod from the Village Administrator, the Church decided to move forward with an offer to purchase the property at 1111 Sycamore Street.

13

48.     River Hills successfully negotiated a purchase contract with the Wisconsin River Bank of Sauk City for their former bank property at 1111 Sycamore Street in Sauk City on September 20, 2013.

49.     The building is approximately 5500 square feet on 2 acres of land.

50.     The purchase price is $310,000 (against an assessed value of approximately $670,000), with the bank to finance at 0% for five years and a 5% cap for an additional five years amortized over 25 years.

51.     River Hills had operated for approximately three years on the adjacent property, 855 Community Drive, Sauk City, also in the Sauk City Business/Industrial Park.  At that time it was renting from Primary Property LLC (Dr. Tim Barthelow, managing partner and Chief Medical Officer, WI Medical Society).  It was unaware of any Conditional Use permitting requirements and used the building for its purposes and numerous community events.  The Church was never cited for any zoning violations during that time.

52.     In speaking with Village Administrator Vicki Breunig, she pointed out to Pastor Virta that the Church would need to apply for a Conditional Use Permit in order to occupy the building at 1111 Sycamore Street. However, since the M-G zone did not allow for churches as a conditional use, the Church would also have to apply to the Village to have the property rezoned to allow churches as a Conditional Use before it could even apply for a CUP.

53.     Ms. Breunig stated to Pastor Virta that churches were allowed as a conditional use only in Residential zones and that it was highly unlikely that the Plan Commission would allow the Sycamore Property to be rezoned residential.

54.     After reading the Zoning Code himself, Pastor Virta found that Charitable Institutions were allowed in AG (agricultural) zones. Having a 501(c)3 determination letter stating that it is a charitable organization, and noting that all the vacant land in the business/industrial park was being leased by the Village for farming purposes, and a large agricultural interest immediately across the street, Pastor Virta applied for an AG rezone of the Property.

55.     Filing for the rezone on October 4, and paying the $500 fee, Pastor Virta anticipated that the church's application would be addressed at the Plan Commission's October 8, 2013 meeting, but it was not initially addressed until the October 29, 2013 meeting.

56.     On October 29, 2013 the Plan Commission received the petition and had an initial discussion; they decided it is probably not a good idea to create an "island" of AG within the business/industrial park but that it would be wiser to amend the zoning ordinance to allow for churches as a conditional use in the zone instead.

57.     Village Administrator Vicki Breunig told the Plan Commission and Pastor Virta that the publication process for a rezone hearing was already in the works and the Village would just go through with it.

15

58.     On November 12, 2013, the Plan Commission discussed amending its Zoning Code to allow for churches in M-G; Pastor Virta mentioned that it would serve both the community and churches better going into the future if churches would be admitted into all zoning districts.

59.     On November 12, 2013, after the Plan Commission meeting ended, the Village Board meeting agenda items (6)-(8) dealt with  the Rezoning Petition of the 1111 Sycamore property. Pastor Virta understood that the rezoning petition was rendered moot since the Plan Commission decided to recommend that the Zoning Code be amended to allow churches as a Conditional Use in the M-G zone rather than the property rezoned to AG. The Church never received any written correspondence regarding the Plan Commission's recommendation).

60.     On November 18, 2013, the Wisconsin State Conditional Approval and remodel plan was sent to the Municipal Clerk of Village of Sauk City by Wisconsin Department of Safety and Professional Services, Plan Examiner Dale Mitchel.

61.     On November 26, 2013, at its next regularly scheduled meeting, the Sauk City Plan Commission formally voted 5-1 to recommend to the Village Board amending section 365-94 to add (G) "Churches and religious meeting places in all residential, business, and industrial districts..." as conditional uses.

62.     The Draft Ordinance was prepared for their review by Village zoning attorney Tim Homar.

63.     However, in his letter of January 21, 2014 (attached as Exhibit D), Village Attorney Homar stated that the Plan Commission did **not** vote to

recommend the Ordinance, but rather according to the Village, the proposed amendment was merely sent for **review** by the Village Board with no formal action taken by the Plan Commission.

64.     At several of the meetings, if not all, Pastor Virta continued to stress that time was of the essence as the Church was sitting on a purchase contract with an expiration date for the 1111 Sycamore Street property.

65.     On December 10, 2013, the Sauk City Village Board received/reviewed the recommendation from the Plan Commission to amend section 365-94 to add (G) as set forth above.

66.     Board Trustee Richard Marks stated his objection, not to the ordinance change itself, but to River Hills Church occupying the 1111 Sycamore St property stating that it, being a former TIF, those taxes were, in effect, promised to the schools; he also stated (in answer to a question by a River Hills member) that if the school board would "sign off" on it, then that would mitigate his objection.

67.     Board Trustee Bob Dederich requested more time and information.

68.     When asked "where do we go from here?" by the President, Village Administrator Vicki Breunig stated that it would take two trustees to agree to place it on the agenda for the next meeting.

69.     When no one so moved, Board Trustee Bob Dederich stated that they could place it on the agenda as late as 48 hours before the next meeting, stressing his desire for more information.

70.     Later in December following the December 10, 2013 meeting of the Village Board, Pastor Virta sat down with Village Attorney Tim Homar and allowed him to read and interact with his reply to his memorandum of 21 November 2013. Mr. Homar agreed with Pastor Virta's reading of the ordinances, and suggested that perhaps River Hills should apply for a CUP as a "community center" which is a conditional use in M-G as it might be less cumbersome.

71.     Over the next weeks Pastor Virta compiled articles and information for the board, demonstrating the economic benefit of churches to their communities, the lack of problems for communities by at least some churches meeting in business and retail zones, and a reply to what he understood to be a grave misrepresentation or misunderstanding of the RLUIPA and Sauk City's zoning ordinances by their attorney, Tim Homar.

72.     Pastor Virta personally delivered that packet to each board member on January 8, 2014.

73.     When it came time for the Village Board meeting on January 14, 2014, it suddenly became clear that the Village was not going to amend its zoning code and the Church would not even be allowed to seek a permit to operate at 1111 Sycamore Street.

74.     Having noted that time was of the essence on many occasions, the Church's expectation was for the Board to follow their procedural ordinances and have a public hearing and vote, if not on January 14th, then January 28th. The

18

possibility have having a vote was shot down before the meeting even started; to wit:

    a.      The Plan Commission's recommendation was NOT on the agenda.

    b.      President Jim Anderson stated publicly and told Pastor Virta, after seeing a standing room only crowd that citizen comment regarding the church will be limited to one and only one spokesperson. Pastor Virta stated that he did not know what every person in the room thinks or represents and that citizens who are non-attenders of the church should be allowed to state their thoughts regardless.

    c.      President Jim Anderson stated that any citizen comment regarding the church is pointless because the church going into the business park is a "dead issue" and has already been decided.

    d.      The meeting was called to order and citizen comment opened with Mr. Anderson's limiting statement.

    e.      Pastor Virta spoke expressing his disappointment that after a month of study and additional information supplied to the Village, the recommendation to allow churches as a CUP in the M-G zone was not on the agenda. He reminded the board of their responsibility to address this and hoped it would be on the agenda on the 28th.

    f.      Pastor Virta concluded his statement saying he hoped, together with all the other economic benefits the church brings, that the board would vote in favor of the change.

19

75.     In subsequent conversations with people from the church and community, Village board members have affirmed that the church purchasing the 1111 Sycamore property is a "dead issue" and will not be taken up again.

76.     All the Church's searches for available property in residential zones where churches are a conditional use turn up nothing at all.

77.     Even if the Church was able to build from scratch, to duplicate the deal it now has would cost no less than $1.2 million dollars. Moreover, even if it were to purchase land, there is no assurance that the Village of Sauk City would allow it to build there insofar as churches are only conditional uses in residential zoning areas.

78.     Since relocating to a temporary use facility, the River Arts Center, River Hills Church has experienced a precipitous drop in attendance, from annual highs of 172 to 104, a 40% reduction; even more in its kids ministry, slashed by nearly 80%.  Numerous parents have told the Church leaders they love our programming but our facilities are inadequate for children.

79.     The Church's consultant has advised that, if it is to grow, if it is to survive, it needs a permanent home.

80.     In order to compensate for the aforementioned loss, the Church has had to eliminate one 3/4 time executive pastor, and reduce Pastor Virta's pay by 40%.

81.     The best means of growth for a church like River Hills is to offer identical services at alternate times in a permanent location.  However it only has

20

access to the River Arts Center from 7:30 a.m. to 11:30 a.m. on Sundays with only one blackout date during the year.

82.   The extensive use of the RAC facility by others makes it available on a consistent basis only in that time slot.

83.   Since churches are limited to residential areas as a conditional use, the Church cannot utilize any building in the entire village without prior authorization from the Village Board.

84.   The permitting process has proven to entail delay, uncertainty and expense.

85.   The Church's right to freely assemble and gather for worship and service is hindered by both the Board's ordinances and hostile actions.

86.   The general ordinance change is a "dead issue" according to the village president, rendering the Church's desire to have a permanent home effectively impracticable.

87.   River Hills cannot conduct its Sunday service in the same manner as it would at the subject property because of the time limitations it has at the RAC.

88.   River Hills cannot have after-hours or before-hours prayer or Sunday School because of the limited time at the RAC.

89.   River Hills is unable to have music rehearsals at the RAC.

90.   River Hills is unable to carry out expressions of faith through decoration because it cannot place items on the walls at the RAC, and has extremely limited access to storage.

91.     River Hills has had to purchase additional equipment to be used for the services held at the RAC.

92.     River Hills has not been able to perform certain events, such as weddings, food pantry ministry, Thanksgiving and Christmas outreach events, concerts, music practice, family gatherings, community meetings, large group counseling and training and multi-church fellowships at the RAC due to the time and space constraints.

93.     River Hills has lost significant ministry opportunities to those citizens in the community for lack of a permanent space.

94.     Many of River Hills's ministry opportunities are being lost forever every day it is not able to use the Property as a religious assembly.

95.     The Church members and Pastor Virta have been humiliated and have endured mental anguish and suffering as a result of these events.

96.     The Church seeks to conduct the aforesaid ministries at the Property, all of which are in furtherance of the sincerely religious beliefs of the Church and of its members:

a.      Weekly assembly of the congregation to worship (Hebrews 10:25);

b.      Weekly preaching, including speech relating to personal morality, God, social, and cultural (2 Timothy 4:2);

c.      Pastoral counseling for the sick, disturbed, lonely, and bereaved;

d.      Prayer meetings (Acts 1:13-14);

e.      Singing and musical performances (Psalms 81:1-2);

22

f.     Baptisms, confirmations, weddings, funerals, and communion (Matthew 28:19; Luke 22:19);

g.     Bible studies;

h.     Nurseries or crib rooms for infants and toddlers;

i.     Youth activities, including religious instruction, games, and sports;

j.     Social gatherings such as church dinners;

k.     Service projects for members of the congregation, the poor, and the general community, such as gatherings for college students (Jacob 1:27);

l.     Expression of their faith through the architecture of the house of worship, signs, crosses, paintings, windows, banners, or decorations;

m.     Evangelism-sharing the Christian message and encouraging others to believe in Jesus the Messiah, particularly those who visit their church meetings;

n.     Financial giving and special offerings to support salaries, building costs, the poor, and ministries for members of the congregation.

97.     Sauk City, through its Zoning Code and the actions of the Zoning Board, is interfering with the Church's religious mission and growth and threatens the continued existence of the church.

98.     The Church requests a jury trial.

**ALLEGATIONS OF LAW**

99.     All acts of the Sauk City, its officers, agents, servants, employees, or persons acting at their behest or direction, were done and are continuing to be done under the color of state law.

23

100.    Unless and until enforcement of the provisions of the Zoning Code discriminating against churches – such as totally excluding churches as a permitted use in all zones and prohibiting churches in M-G Zoning District even though similar assembly uses are conditionally permitted there – are enjoined, River Hills will suffer and continue to suffer irreparable injury to their federal and state rights.

101.    The Church's religious worship, religious expression, and religious assembly are fully protected by the First and Fourteenth Amendments to the United States Constitution.

102.    Concomitantly, the use of an illegal zoning ordinance to deny the Church access to its property to engage in protected religious worship, religious expression, and religious assembly is a violation of the First Amendment and the Fourteenth Amendment to the United States Constitution, RLUIPA, Wisconsin land use law, and Section 1 Article 18 of the Wisconsin Constitution.

103.    Unless and until the Sauk City's interference of the Church's ministries is enjoined, the Church will suffer and continues to suffer irreparable harm to its federal constitutional and statutory rights and damages.

104.    The Church has no adequate or speedy remedy at law to correct or redress the deprivations of their constitutional and civil rights.

105.    Sauk City will suffer no harm if the injunctive relief is granted to the Church.

106.    The harm to the Church far outweighs any harm to the Sauk City. The public interest is benefited when constitutional and civil rights are protected.

24

### FIRST CAUSE OF ACTION – FACIAL VIOLATION OF RLUIPA'S TOTAL EXCLUSION PROVISION

107.   The allegations contained in all preceding paragraphs are incorporated here by reference.

108.   Section 2000cc (b)(3)(B) of RLUIPA provides:

> (3) EXCLUSIONS AND LIMITS- No government shall impose or implement a land use regulation that--
>
> (A) totally excludes religious assemblies from a jurisdiction; or
>
> (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction.

109.   Sauk City's Zoning Code, both facially and as applied to deny the Church's a property for religious assembly use within its jurisdiction, is an impermissible total exclusion in violation of 42 U.S.C. § 2000cc(3)(A).

**WHEREFORE**, the Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

### SECOND CAUSE OF ACTION – VIOLATION OF RLUIPA UNREASONABLE LIMITATION PROVISION

110.   The allegations contained in all preceding paragraphs are incorporated here by reference.

111.    Sauk City's Zoning Code, both facially and as applied in denying the Church's use of the subject property, is an unreasonable limitation on churches, including the Church in Sauk City.

112.    Sauk City's Ordinance therefore violates the unreasonable limitation provision of RLUIPA.

**WHEREFORE**, the Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

### THIRD CAUSE OF ACTION – FACIAL VIOLATION OF RLUIPA EQUAL TERMS PROVISION

113.    Section 2(b)(1) of RLUIPA prohibits Sauk City from treating a religious assembly use less favorably than a non-religious assembly use:

(1)    Equal Terms

No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less than equal terms with a nonreligious assembly or institution.

114.    In *River of Life Kingdom Ministries v. Vill. of Hazel Crest*, 611 F.3d 367 (7th Cir. 2010), the Seventh Circuit interpreted the equal terms provision of RLUIPA as providing that religious and secular land uses may not be treated differently from the standpoint of an accepted zoning criterion.  The court stated that "should a municipality create what purports to be a pure commercial district and then allow other uses, a church would have an **easy** victory if the municipality kept it out." *Id.* at 374 (emphasis added).

115.    "If a church and a community center, though different in many respects, do not differ with respect to any accepted zoning criterion, [e.g. traffic,

26

safety, effect on retail continuity] then an ordinance that allows one and forbids the other denies equality and violates the equal-terms provision." *Id.* at 371.

116.    Chapter 365 of Sauk City's Municipal Code regulates land uses and zoning within Sauk City's jurisdiction. According to § 365-10, Sauk City is divided into the following, fourteen zoning districts: Single-Family Residential District (R-1-A and R-1-B), Two-family Residential District (R-2), Multifamily Residential District (R-M), Highway Business District (B-H), Central Business District (B-C), Neighborhood Business District (B-N), Limited Industrial District (M-L), General Industrial District (M-G), Agricultural District (A-G), Agricultural Preservation District (A-P), Agricultural Holding District (A-H), Agricultural Transition District (A-T), and Agricultural-Related Manufacturing and Commercial District (A-R).

117.    Churches are not zoned as permitted or approved uses in any of the fourteen zoning districts. According to § 365-94(E), Churches are only classified as a "conditional use"[1] in residential districts "provided that the lot area is not less than two acres and all principal structures and uses are not less than 50 feet from any residential district boundary line."

118.    Sauk City's  unreasonable limitations as to where churches specifically (as opposed to assembly uses generally) may operate violates the equal terms provision because churches are treated on less than equal terms with the following nonreligious assemblies which Sauk City permits and regulates as follows:

---

[1] § 365-9 defines "USE, CONDITIONAL" as: A use, either public or private, which because of its unique characteristics cannot be properly classified as an approved use in any particular district or districts. In each case, after due consideration by the Plan Commission of the impact of such use upon neighboring land and of the public need for the particular use at the particular location, such conditional use may or may not be granted.

| Assembly Uses | Zones Where Treated as Conditional Use | Zones Where Treated as Permitted Use |
|---|---|---|
| **Church** | <u>Only</u> in Residential Districts and <u>only</u> on 2 acres of land | <u>NONE</u> |
| **Community Centers** | R-1-A, R-1-B, R-2, R-M, B-H, B-C, B-N, M-L, M-G, with no two acre requirement | None |
| **Libraries** | R-1-A, R-1-B, R-2, R-M, B-H, B-C, B-N, M-L, M-G, with no two acre requirement | None |
| **Cultural Uses/Centers** | R-1-A, R-1-B, R-2, R-M, B-H, B-C, B-N, M-L, M-G with no two acre requirement | None |
| **Governmental Uses** | R-1-A, R-1-B, R-2, R-M, B-H, B-C, B-N, M-L, M-G with no two acre requirement | None |
| **Clubs** | R-M with no two acre requirement | B-C |
| **Commercial Schools** | | B-C |
| **Hotels** | | B-C |
| **Funeral Homes** | B-H and B-C with no two acre requirement | |
| **Tourist/Hospitality Centers** | | B-C |
| **Fraternities** | R-M with no two acre requirement | None |
| **Lodges** | R-M with no two acre requirement | None |
| **Non-commercial Meeting Places** | R-M with no two acre requirement | None |
| **Commercial recreational facilities, such as bowling alleys, clubs, dance halls, driving ranges, gymnasiums, lodges, pool halls, Turkish baths, and theaters** | B-H, B-C, B-N with no two acre requirement | May be permitted according to § 365-98 |

119.   Some of the aforementioned uses are the same RLUIPA's legislative history identifies as comparable to religious assemblies for purposes of an "equal terms" analysis: "banquet halls, *clubs*, *community centers*, *funeral parlors*, *fraternal organizations*, health clubs, *gyms*, *places of amusement*, *recreation centers, lodges, libraries, museums, municipal buildings, meeting halls,* and *theaters*." (italics added) H. REP. 106-219 at 19 (July 1, 1999).

120.   As such, Sauk City's Code treats churches on less than equal terms with *every other kind* of non-religious assembly regardless of what accepted zoning criterion is used in the analysis.

121.   Sauk City's code provides more favorable terms for many assembly uses which do not generate tax revenue and may be operated for tax-exempt charitable purposes such as community centers, libraries, theaters, cultural and governmental uses/centers. See Chart *supra*.

122.   Even though those uses do not differ from a church use from the standpoint of the City's or any other asserted, let alone accepted, zoning criteria, the City forbids churches in all but residential districts where even there they are forced to have two acres and go through the extensive and discretionary conditional use permitting process.

**WHEREFORE**, The Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

### FOURTH CAUSE OF ACTION – AS APPLIED VIOLATION OF RLUIPA EQUAL TERMS PROVISION

29

123.    The allegations contained in all preceding paragraphs are incorporated here by reference.

124.    The City of Sauk City, in enforcing its Zoning Code against the Church, has violated the Equal Terms provision of RLUIPA.

**WHEREFORE**, the Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

### FIFTH CAUSE OF ACTION – FACIAL VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

125.    The allegations contained in all preceding paragraphs are incorporated here by reference.

126.    The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution requires that the government treat similarly situated assembly uses equally.

127.    The Sauk City's Ordinance therefore violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

**WHEREFORE**, The Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

### SIXTH CAUSE OF ACTION – AS-APPLIED VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT

128.    The allegations contained in all preceding paragraphs are incorporated here by reference.

129.    The United States District Court for the Eastern District of Wisconsin has held that enforcement of a zoning ordinance violates the equal protection clause if:

30

"(1) the decision of the particular zoning body is arbitrary; or (2) if the ordinance is applied or enforced with a discriminatory intent or  purpose." *Scudder v. Town of Greendale, Indiana*, 704 F.2d 999, 1002 (7th Cir. 1983) (citation omitted). "A particular decision or action is 'arbitrary' if it is reached 'without adequate determining principle or was unreasoned.'" Id. (citation omitted). A reasoned application of a municipal ordinance is therefore not arbitrary. Id. at 1002.

*Calvary Temple Assembly of God v. City of Marinette,* 2008 U.S. Dist. LEXIS 55500 (E.D. Wis. July 18, 2008).

130.   Sauk City's decisions with respect to the Church's use of the Property have been arbitrary and/or its Zoning Code has been applied or enforced against the Church with a discriminatory intent or purpose.

**WHEREFORE**, The Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

### SEVENTH CAUSE OF ACTION – VIOLATION OF THE RIGHT TO FREE EXERCISE OF RELIGION UNDER THE UNITED STATES CONSTITUTION

131.   The allegations contained in all preceding paragraphs are incorporated here by reference.

132.   While general laws of neutral applicability are typically subject to rational basis review, "where the State has in place a system of individual exemptions, it may not refuse to extend that system to cases of 'religious hardship' without compelling reason." *Employment Div. v. Smith,* 494 U.S. 872, 884 (1990); see also *Lukumi,* 508 U.S. 520 at 537.

133.   Sauk City's Code allows the Village to an individual assessment of the Church's use of the Property.

134.    The Church and its members hold sincere religious beliefs which motivate them to preach the Gospel of Jesus the Messiah, worship, minister to others, and share their faith with others.

135.    Sauk City lacks a compelling or even rational basis that would justify their denial of the Church's use of 1111 Sycamore Street as a church.

136.    Sauk City's Ordinance therefore violates the Free Exercise Clause of the First Amendment to the United States Constitution as incorporated and applied to the states through the Fourteenth Amendment.

**WHEREFORE**, The Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

## EIGHTH CAUSE OF ACTION – VIOLATION OF THE RIGHT TO FREE SPEECH UNDER THE UNITED STATES CONSTITUTION

137.    The allegations contained in all preceding paragraphs are incorporated here by reference.

138.    The Church's religious activities and speech are fully protected under the Free Speech Clause of the First Amendment.

139.    In limiting, through its zoning law, the location of religious organizations like the Church, Sauk City restricts speech.

140.    Sauk City's ban of religious assembly uses within its zoning districts is a content-based restriction on speech because it restricts religious speech by regulating and restraining where churches are allowed, conditionally allowed, and prohibited.

141.   Sauk City's Ordinance is overbroad because it sweeps within its ambit protected First Amendment religious speech.

142.   Sauk City's Ordinance operates as an impermissible prior restraint on speech, granting broad and virtually standard-less discretion to decision-making officials to decide whether to exclude religious uses and where to permit them.

143.   Sauk City's Ordinance and actions do not leave open ample alternative channels of communication for the religious speech of and viewpoint of River Hills.

144.   The Church has a right to conduct its First Amendment activities at the Property where similar secular organizations are conditionally permitted.

145.   Sauk City's Ordinance and actions chill the Church's constitutional and statutory rights.

146.   Sauk City lacks a compelling interest to justify its zoning of churches and actions hostile to the Church's use of the Property for religious speech activities.

147.   Sauk City's Ordinance and actions are not narrowly tailored to achieve a compelling interest.

148.   The Sauk City may not suppress protected speech absent a showing of a clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order.

149.   The Church's religious use at the Property does not implicate any threat to public safety, peace, or order.

150.    Sauk City's Ordinance and actions are not the least restrictive means of achieving a compelling interest.

151.    Sauk City's Ordinance accordingly violates the Free Speech Clause of the First Amendment to the United States Constitution as incorporated and applied to the states through the Fourteenth Amendment.

**WHEREFORE**, the Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

### NINTH CAUSE OF ACTION – VIOLATION OF RLUIPA SUBSTANTIAL BURDEN PROVISION

152.    The allegations contained in all preceding paragraphs are incorporated here by reference.

153.    Section 2000cc (a)(1) of RLUIPA provides:

(1) General rule.
No government shall impose or implement a land use regulation that imposes a substantial burden on the religious exercise of a person, including a religious assembly or institution, unless the government demonstrates that  imposition of the burden on that person, assembly, or institution—
(A)     is in furtherance of a compelling governmental interest; and
(B)     is the least restrictive means of furthering that compelling governmental interest.

154.    The Seventh Circuit has held that, in the context of RLUIPA, "a land use regulation imposes a 'substantial burden' on religious exercise if it 'necessarily bears direct, primary, and fundamental responsibility for rendering religious exercise -- including the use of real property for the purpose thereof within the regulated jurisdiction generally -- effectively impracticable.'" *Vision Church v. Vill.*

34

*of Long Grove,* 468 F.3d 975, 997 (7th Cir. 2006), quoting *Civil Liberties for Urban Believers v. City of Chicago,* 342 F.3d 752, 762-63 (7th Cir. 2003).

155.   Sauk City's Ordinance, facially and applied to the Church's use of the Property for religious assembly, bears direct responsibility for rendering the Church's religious exercise at the Property effectively impracticable.

156.   The Church and its members hold sincere religious beliefs which motivate them to preach the Gospel of Jesus the Messiah, worship, minister to others, and share their faith with others.

157.   Sauk City's Ordinance and actions have also caused the Church delay in securing worship space, rental expenses at the alternate location and for the unusable worship space at the Church Property, and have caused uncertainty as to whether or not the Church will purchase the Property.

158.   Such delay, uncertainty and expense were found to be a substantial burden in the RLUIPA context by the Seventh Circuit.

> The burden here was substantial. The Church could have searched around for other parcels of land (though a lot more effort would have been involved in such a search than, as the City would have it, calling up some real estate agents), or it could have continued filing applications with the City, but in either case there would have been delay, uncertainty, and expense. That the burden would not be insuperable would not make it insubstantial.

*Sts. Constantine & Helen Greek Orthodox Church, Inc. v. City of New Berlin,* 396 F.3d 895, 901 (7th Cir. 2005).

159.   Sauk City lacks a compelling or even rational basis that would justify their denial of the Church's use of the subject property as a church.

35

160.    Sauk City will be unable to demonstrate that preventing the use of the subject property as a church by River Hills will be the narrowest alternative to achieving any governmental interest, let alone a compelling interest.

161.    Sauk City's Ordinance permits its officials to make individualized assessments of the proposed uses of property within the Village, including the subject property.

162.    Sauk City's Ordinance, facially and as applied in denying the Church's use of the property for religious assembly, therefore violates the substantial burden provision of RLUIPA.

WHEREFORE, the Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

## ELEVENTH CAUSE OF ACTION – SAUK CITY'S ARBITRARILY DRAWN ZONING DISTRICT VIOLATES THE LAW OF WISCONSIN

163.    The Supreme Court of Wisconsin has held that a zoning ordinance "is arbitrary and unreasonable" if "it does not bear a substantial relation to public health, safety, morals or general welfare" and is therefore unconstitutional on its face. *Town of Rhine v. Bizzell,* 2008 WI 76, 62-65 (2008).

164.    The court stated that "the routine employment of special uses, especially without (or with few) standards or criteria, opens up both individual zoning decisions and the zoning ordinance provision itself to constitutional challenges as being arbitrary and capricious." *Id.* at 52, quoting John B. Bredin, *Common Problems with Zoning Ordinances*, American Planning Association Zoning News, Nov. 2002, at 2.

36

165.    The zoning district does not bear a substantial relation to public health, safety, morals or general welfare.

166.    The denial of the Church's use of the Property has no substantial relation to public health, safety, morals or general welfare and is therefore arbitrary and capricious in violation of Wisconsin law.

**WHEREFORE**, the Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

## TWELFTH CAUSE OF ACTION – VIOLATION OF WISCONSIN CONSTITUTION

167.    The allegations contained in all preceding paragraphs are incorporated here by reference.

168.    Article 1 Section 18 of the Wisconsin Constitution provides:

Section 18. Freedom of worship; liberty of conscience; state religion; public funds. [As amended Nov. 1982]

The right of every person to worship Almighty God according to the dictates of conscience shall never be infringed; nor shall any person be compelled to attend, erect or support any place of worship, or to maintain any ministry, without consent; nor shall any control of, or interference with, the rights of conscience be permitted, or any preference be given by law to any religious establishments or modes of worship; nor shall any money be drawn from the treasury for the benefit of religious societies, or religious or theological seminaries.

169.    The government must have a compelling interest that cannot be served by a less restrictive alternative in order to enact or enforce an ordinance that places a burden on sincerely held religious beliefs under Wisconsin's Freedom of Worship Clause.  *Coulee Catholic Sch. v. Labor & Indus. Review Comm'n*, 2009 WI 88, P60-P61 (2009).

37

170.    The Church and its members hold sincere religious beliefs which motivate them to preach the Gospel of Jesus the Messiah, worship, minister to others, and share their faith with others.

171.    Sauk City's Zoning Code and actions denying the Church religious assembly use of 1111 Sycamore Street violates Article 1, Section 18 (Freedom of Worship, Protection of Conscience) of the Wisconsin Constitution.

**WHEREFORE**, The Church respectfully prays that the Court grant the relief set forth in the prayer for relief.

## PRAYER FOR RELIEF

**WHEREFORE**, the Church respectfully request relief as follows:

A.    That this Court issue a preliminary and permanent injunction precluding Sauk City from further impeding or interfering with the Church's right to use the property at 1111 Sycamore Street, Sauk City, Wisconsin, as a church;

B.    That this Court issue a preliminary and permanent injunction, enjoining Sauk City, its officers, agents, employees, attorneys and all other persons acting in active concert with it, from enforcing its Ordinance, both facially and as applied to the Church, and from preventing or attempting to prevent the Church from using the property at 1111 Sycamore Street, Sauk City, Wisconsin, as a church;

C.    That this Court enter a Declaratory Judgment declaring that Sauk City's requirement that churches obtain a conditional use permit to locate within its

jurisdiction or are in the M-G district is void and unconstitutional both on its face and as applied to the Church;

D.   That this Court enter a declaratory judgment that the Sauk City zoning of churches is illegal and that religious assemblies are declared a permitted use unless and until Sauk City enacts a new code consistent with the First Amendment and the RLUIPA; and

E.   That this Court award damages for violation of Church's statutory and constitutional rights;

F.   That this Court award compensatory damages for the Church's economic losses caused by the delay in being able to use the subject property for church purposes, including but not limited to rent payments for the Church Property and alternate worship location, loss of value added to the Church Property;

G.   That this Court award compensatory damages if the Church is unable to purchase the Sycamore property;

H.   That this Court award the Church compensatory damages in an amount to be determined for pain and suffering due to Sauk City's violation of the Church's constitutional rights, including but not limited to humiliation, damage to reputation, aggravation and inconvenience, and mental anguish and suffering;

I.   That this Court award the Church its costs and expenses of this action, including reasonable attorney's fees, pursuant to 42 U.S.C. 1988, and other applicable law;

J.      That this Court retain jurisdiction of this matter as necessary to enforce the

        Court's orders; and

K.      Grant such other relief as this Court deems appropriate.

Respectfully submitted this 28th day of January, 2014.


  /s/  NOEL W. STERETT                          /s/  JOHN W. MAUCK
NOEL STERETT*                          JOHN W. MAUCK*
ONE NORTH LASALLE STREET               ONE NORTH LASALLE STREET
SUITE 600                              SUITE 600
CHICAGO, IL  60602                     CHICAGO, IL  60602
TELEPHONE: (312) 726-1243              TELEPHONE: (312) 726-1243
FACSIMILE: (312) 726-1039              FACSIMILE: (312) 726-1039
nsterett@mauckbaker.com                jmauck@mauckbaker.com
ATTORNEYS FOR PLAINTIFFS               ATTORNEYS FOR PLAINTIFFS


*Pending Admission *Pro Hac Vice*